Hill v. The State.

5L 725
16L 118
16L 408

## JOE HILL v. THE STATE.

1. ACT OF LEGISLATURE. *When it takes effect. Governor's approval.* Under the provisions of the Constitution of 1870, an act of the Legislature which becomes a law by the approval of the Governor, and goes into effect by its terms from and after its passage, takes effect when the Governor approves it by his signature.

2. CRIMINAL LAW. *Duty of judge.* A judge may, in a criminal case, ask a witness a question to elucidate a fact, overlooked by counsel, which would tend to protect the innocent or prevent the escape of the guilty.

3. SAME. *Rape.* On the trial of an indictment for the abuse of a female under ten years of age, when the injured girl is put on the stand as a witness, it is not error for the trial judge to call upon an elderly woman, who had nothing to do with the case, but was well known to the witness, to sit beside her; nor is there error in the woman telling the witness, when the first question was asked, to answer it.

4. SAME. *Same Recent complaint.* Where in such a case the defendant, after committing the act of abuse, threatened to kill the child if she told on him, and she was induced to tell by the suffering produced by a virulent form of syphilitic disease communicated to her by him, it was not error to allow the person to whom she made complaint to detail her statements in corroboration of her testimony, upon proper instructions to the jury as to the effect of delay on the weight to be given to such complaints.

### FROM DAVIDSON.

Appeal in error from the Criminal Court of Davidson county. J. M. QUARLES, J.

SLOAN and GREGORY for Hill.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

Hill *v.* The State.

On the 26th of November, 1879, the grand jury found a true bill against the prisoner, Joe Hill, the indictment containing two counts, one for an assault with intent forcibly to ravish and carnally know Maggie Bryley, an infant under the age of ten years, and the other count for unlawfully carnally knowing her. Upon his trial at the April term, 1880, the jury found him guilty as charged in the second count, and assessed his punishment. From the judgment rendered in accordance with the verdict the defendant has appealed in error.

The first point made for reversal goes to the existence of the law under which the conviction was had. The Code, sec. 4614, provides: "Any person who shall unlawfully and carnally know and abuse a female under the age of ten years shall, on conviction, be punished as in case of rape." The Code, sec. 4615, is: "Any person guilty of committing an assault and battery upon any female, with an intent forcibly and against her will to have carnal knowledge of her, shall, on conviction, be imprisoned in the penitentiary not less than two nor more than ten years." It has been held by this court that the latter section does not apply to cases where the female is under ten years of age. *Rhodes* v. *State*, 1 Cold., 351; *Brown* v. *State*, 6 Baxt., 422.

In this state of the law, the Legislature of 1879 passed an act entitled "An act to amend sec. 4614 of the Code," and worded, thus: "That sec. 4614 of the Code be so amended as to read that any person who shall commit an assault and battery upon a female,

Hill *v.* The State.

under the age of ten years, with the intent to un- lawfully and carnally know her, shall, on conviction, be punished as in case of rape." It was further enacted that the act should take effect from and after its passage, the public welfare requiring it. The act was passed on March 7, 1879, and was approved by the Governor on March 11, 1879.

It was no doubt intended by the legislator who drafted the act of 1879, and the Legislature which passed it, that the amendment should be of sec. 4615 of the Code instead of sec. 4614. There never had been any difficulty about the latter section, which contains the only statutory provision relating to the offense of carnally knowing a female under ten years of age. The Legislature could never have intended to repeal it without enacting a law in its place to punish the crime. The doubt had been as to whether sec. 4615 covered the case of an assault on a female under ten years, and it was, almost certainly, to secure a positive provision of law on the subject that the act of 1879, ch. 63, was passed.

The passage of the act in its present shape does leave it open to grave doubt whether a conviction for the actual carnal knowledge, since it went into effect, of a female under ten years of age could be sustained under the Code, sec. 4614. The defendant was convicted under that section, and the precise day on which the offense was committed might well admit of discussion. The injured girl was about eight years of age, and her only companion at the time was a child aged five years, and not examined on the trial.

The principal witness says that she was abused on Monday, and it might have been three weeks before she told about it, being then induced to do so by the painful effects of a syphilitic disease communicated to her by the prisoner. The defendant was brought before a magistrate for the offense "early in April," 1879, his victim having disclosed the facts to her mother and her aunt about three days before. The offense was, however, committed at the time that the mother and daughter lived with Mary Taylor "on the hill." Mary Taylor, who is introduced by the defendant as a witness, proves that "she hired out on the 8th of March, 1879, and moved away from the place on the hill three days thereafter." She also stated, without objection, that she learned from the aunt of the injured girl that the injury was done to the girl on the day before Maggie and her mother moved away from her house. The offense must therefore have been committed before the 11th of March, and probably on the Monday nearest to that date. The month of March in 1879 commenced on Saturday, and the 3d and 10th days fell on Monday. If we take the latest date, it would be one day before the act of 1879, ch. 63, was approved by the Governor.

Under the Constitution of 1834 of this State, it was held that upon the signing of a bill by the speakers of the two houses, after its passage by the Legislature, "the law takes effect from the date of its passage by relation." *Dyer* v. *State*, Meigs, 237, 255. The reason given was that the duty performed

by the speaker in signing the statutes is not of a legislative but ministerial character. The absurd doctrine of the common law, that a statute might go into effect before the formalities prescribed to give it effect had actually been performed, was still adhered to. The Constitution of 1870, art. 2, sec. 20, provides: "No law of a general nature shall take effect until forty days after its passage, unless the same or the caption shall state that the public welfare requires that it should take effect sooner." And by sec. 17 of the same article, it is further provided, among other things, that no bill shall become a law until it "shall have been signed by the respective speakers in open session, the fact of such signing to be noted on the journal, and shall have received the approval of the Governor, or shall have been otherwise passed under the provisions of this Constitution." The provisions thus alluded to are contained in art. 3, sec. 18, and are to the effect that the bill shall become a law without his signature if passed by a majority of each house over his veto, or if the Governor fail to return the bill with his objections within five days, Sundays excepted, after it shall have been presented to him, and the General Assembly continues in session so long. These constitutional provisions establish as the present rule, that an act takes effect when the formalities of enactment are actually complete under the Constitution, and not sooner, even where the Legislature says that it shall take effect from its passage. It is passed when the constitutional formalities are completed.

In this view, the act of 1879, ch. 63, only went into effect on the 11th of March, 1879, when it was approved by the Governor, and the offense of the defendant was committed before its passage. By the common law, the repeal of a statute creating an offense effectually annulled it as if it had never been the law, and no proceedings could be had upon it after the repeal. But the Code, sec. 49, provides: "The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed." This provision applies in criminal cases. *Richardson* v. *State*, 3 Cold., 122.

This conclusion renders it unnecessary to consider whether we can treat the reference in the act of 1879 to the wrong section of the Code as a clerical mistake, or to determine whether the statute repeals that section, conceding it to apply to sec. 4614. *Commonwealth* v. *Herrick*, 6 Cush., 465; *State* v. *Ingersoll*, 17 Wis., 631; *People* v. *Pritchard*, 21 Mich., 236; *Smith* v. *Hickman*, Cooke, 330.

The next objection made is, that the court asked a witness a question after the parties had concluded their examination. The injured girl had deposed that the offense had been committed while she and her mother were living with Mary Taylor. Her statement was, that she and another little girl, the daughter of Mary Taylor, were playing in front of Mary Taylor's house, when the defendant took her inside of the house and committed the outrage. The defendant introduced Mary Taylor, who stated in the course of

her examination that she always locked her door when she went from home to her work. After she had been cross-examined she was dismissed and left the stand, when the trial judge called her back and asked her: "Did I understand you to say, in answer to the questions which have been asked you, that your door was locked by you the day this offense was said to have been committed?" The witness replied: "No, sir; I do not swear that. I left my little girl at home that day and the door was not locked."

In the argument made against the action of the trial judge, reliance is placed upon rulings of this court upon the impropriety of a circuit judge bringing out illegal testimony as to political opinions, which did happen in one or two instances during the heated period following the late civil war. If, too, the trial judge were to show by his active interference in the conduct of the cause that he was not the impartial arbiter he should be, there can be no doubt that it would be our duty to correct his error. But a judge is not a mere figure-head, and, as has been said by this court, "may very properly ask questions of witnesses." *Butler* v. *Boyles*, 9 Hum., 155. And certainly it has never been held to be error for a trial judge, by a pertinent question, to elicit a fact overlooked by counsel which would tend to protect the innocent or prevent the escape of the guilty.

When the injured girl was placed upon the witness stand, an elderly woman who knew her, but had nothing to do with the case, was called by the court and asked to sit beside the witness on account of her ten-

der years, and, when the first question was propounded
to the witness, the woman told her to answer the
question. This· was objected to, and is now assigned
as error. But the course pursued was highly com-
mendable. The object manifestly was simply to put
the witness at ease by the presence of one of her ac-
quaintances of her own sex, and to encourage her to
speak out. There is not the least pretense for the
imputation of improper motive, or the exercise of im-
proper influence in shaping the testimony.

The mother and aunt of the principal witness were
permitted by the court to state to the jury the par-
ticulars of the child's complaint when first made to
them. Such statements, made recently after the com-
mission of the offense, are admissible as confirmatory
of the witness's credibility. *Phillips* v. *State*, 9 Hum.,
246; *Benstine* v. *State*, 2 Lea, 175. The objection
is, that the complaint was not recent. This is true
in one sense. The statements were not made until,
as the witness herself says, three weeks after the com-
mission of the offense. But she also says that the
defendant threatened to kill her if she told on him,
and she was induced to tell on account of her suffer-
ings caused by the virulent form of the syphilitic dis-
ease with which the defendant had inoculated her.
The court properly instructed the jury upon the effect
of lapse of time on the weight to be attached to such
complaints, and we cannot say, in view of the tender
years of the child and the effect of the defendant's
threats, that they were not properly admitted.

The defendant, in his affidavit for a new trial,

Hill *v.* The State.

makes a reference to some remark of the judge to his counsel, while arguing the case, which he thinks prejudiced his case with the jury.     Nothing of the kind appears in the bill of exceptions, and the matter cannot be noticed.     Nor can we see that the remark, if made, was prejudicial to him.

The defendant's counsel asked for certain special instructions, which were refused.     It would be useless to recite them.     Wherever they embodied good law, the court was justified in refusing them, because his charge was already sufficiently full on these very points.

Affirm the judgment.